Reese, J.
delivered the opinion of the court.
The question, which at the threshold presents itself is, whether in a case of partial intestacy, those claiming a distribution of the personal estate, not bequeathed, shall be required to bring into contribution the portions advanced to them by the testator in his life time?- As such contribution is directed by the statute of distribution, the entire provisions of which are distinctly and in terms predicated upon a dying intestate, it is argued, that were such intestacy does not exist as to the whole estate, the case, by the very letter of the statute required with a view tc such contribution has not occurred, and that the equality which the statute seeks to attain in cases of intestacy, can have no ground upon which to operate, where the testator, by making a will, has shown a purpose *360 not to submit to the rule of distribution by the law prescrib-0 . . 1 feuch have been the opinions of the English courts upon the statute of Charles the Second, of which our statute of 1766 is a copy. See Ves. 224: 2 William’s on Executors, 918, 919. And such too have been the opinions of the courts in some states of our union. See 4 Dessau. 252. But solid as may be deemed the grounds upon which these decisions have been based, the question here is not regarded as open. For although the cases of Vance vs. Huling, 2 Yer. Rep. 134: and Goodrich vs. Sturdevant, 3 Yer. Rep. 95, arose upon the statute of descents, 1784, still, as the provisions of that statute, also, are predicated upon a dying without a last will and testament, the same objection would have existed to the collation of the lands settled upon his children by the testator in his life time, with those undevised lands which constituted the subject of the partition. The same remarks may be made with regard to the decisions of North Carolina upon our statute of 1766. 3 Hawk. 76: 2 Murphy, 150.
2. The next question is, whether in a case of partial intestacy, the devises and bequests in the will can, under the act of 1766, be considered as advancements made, or portions settled in the life time of the testator, so as to affect the distribution of the uubequeathed personal property? This question has been conclusively determined in the negative in England, upon the statute of Charles the Second; in North Caroling, upon our statute, and in other states of the union, upon statutes similar; and there is no authority to the contrary. The cases of Vance vs. Huling, 2 Yer. Rep. 135, and Goodrich vs. Sturdevant, 3 Yer. Rep. 95, are expressly placed upon the omission, in the Statute of descents, 1784, of the words, uin his life time,” which occur in the statute of distributions of 1766, and the settlement cases in England, also referred to in the above'mentioned cases, distinctly disclaim the construction by them given to the terms of the settlements in question, as being applicable, or as having at any time been adopted in reference to cases arising under the statute of distributions.
It is decided, indeed, in the cases in 1 and 2 Yer. Rep. *361 that lands devised may be brought mto collation with lands j ■ i i • . , , , . ,, undevised, but it cannot thence be contended _ B ( that because m this case lands were devised, they shall by virtue of these decisions, be brought into contribution in the distribution of the unbequeathed personal estate, because, as we have said, these decisions were made upon the ground of the omission of the words “in his life time,” in the act of 1784, which words occur in the act of 1766, under which the case before us arises, and by virtue of the terms of the latter act, both devises of land and bequests of personal property are excluded from the claim of contribution in a case of partial intestacy.
3. A question on behalf of the daughters of the testator, has been raised upon the words ill the commencement of the codicil, which are as follows, to wit: “Since 1 have assigned the above, I find 1 had forgotten to make provision for my daughters; after the death of my wife, I wish my negroes to be sold, except negro boy Jack, which I give to my son, Michael Gleaves,” and then he excepts and bequeaths three other negroes. It is insisted, that after the declaration of the testator, that he had not made a provision for his daughters, the sense of the thing and the intention of the testator require that the words, “therefore,” or “to that end,” should be inserted, so that it might read', that having discovered that he had not made an adequate or any provision for his daughters, for that end or purpose, he wished his negroes to be sold, after the death of his wife, with the exceptions enumerated.
It is not necessary to criticise the cases which have been referred to on either side, to show that the court to effectuate an apparent intention, have, or have not over the words of the will, the suppletory power contended for. Because, in the balance of the codicil there is a specific bequest to one of the daughters of $200, with directions that she should have no more, and all the debts due the testator and all his stock of horses, cattle, &c. are directed to be equally divided among all the children, including the daughters, except the daughter above spoken of.
If then the testator had disposed of the proceeds of the *362 sale- of the negroes, there is from the codicil itself, more reason to believe that with some further view to a provision for his daughters, he would have given the proceeds among all his children, with the exception perhaps of one daughter, than that he would have given such proceeds to the daughters exclusively. We are therefore of opinion that the decree of the chancellor should be affirmed-.
Decree affirmed.